Good morning, Your Honor. May it please the Court, Victor Nieblas for Petitioner Joel Alcala. Your Honor, in this case, one of the main issues that's being raised is whether or not this case involves a final order of removal. And in this case, Your Honor, there are five acts that occurred during the proceedings that could be considered final orders of removal. Number one is that the immigration judge specifically found Mr. Alcala removable. Recently, this Court, Your Honor, in Long V. Gonzalez, held that this act alone is an order of deportation. Number two, we have the expedited removal order, which obviously is an order of deportation, which is important because number three, the order of termination, the judge ordering to terminate proceedings, basically makes the petitioner immediately deportable. Number four, the BIA denied the initial appeal, and certainly that's a final order. And number five, the BIA denying the motion to reopen certainly is a final order of removal. Final orders of removal have been discussed by the courts for quite a while in FOTI v. INS. The Supreme Court said, well, this term is not as clear as we would like to think. And they said all determinations made during an incident to the administrative proceedings conducted by the special inquiry officers would be final orders. Is there an order which states that Mr. Alcala shall be removed forthwith? Yes, Your Honor. What is the record citation to what you say is the final order of removal, please? Your Honor, in terminating proceedings to reinstate the previous removal order, which is the expedited removal order. All right. There was a dismissal of removal proceedings because the immigration authorities brought to the attention of the IJ that they could reinstate administratively a prior order of removal because he was subject to that prior order of removal because he had entered the country after being deported without permission. My question, and it's a very strict one, and you may not be able to answer it, and I wouldn't blame you for it, but is there something in black and white which says Alcala will be remanded to the custody of the immigration authorities and removed from this country? Is there something that says that? Your Honor, in the proceedings, in order for the judge to terminate proceedings, the government had to file the reinstatement order, which specifically states that. And where is that reinstatement order in the record, sir? It's in the record, Your Honor, and I can pull it out if you would like to. It is part of the record. That is the sole reason why the judge terminated proceedings. I think one of the big problems we have is that there's a lack of jurisdiction for this Court to review under 1252A a order which is not a final order of removal. Now, if you have something that you characterize as a final order of removal, you do me a great favor by pointing me to precisely that portion of the record so that I can review that writing. Can you do that, sir? Yes, I will, Your Honor. Once I get to my certified record, and I certainly will provide it on rebuttal. You're going to save a minute for rebuttal, right? Yes, Your Honor. We'll do that then. Okay, go ahead. Let me ask you another question, which leads me to the same place that Judge Bea is. Has there been any denial in this record of your client's application for adjustment of status? It was pre-termitted, Your Honor. By terminating proceedings, the judge did not get to that issue. Well, there's been no denial of his application for adjustment of status then in this case. All we've done is we ended a hearing on what he was going to do. Has there any place been a situation where your client has challenged the actual reinstatement of the prior removal order? No, Your Honor, because as far as I'm concerned, there is not much review when it comes to reinstatement procedures. Has the government ever reinstated it? The whole purpose why they terminated the proceedings was to reinstate them, to reinstate Mr. Alcalan. To this day, they have not done so. The government has never reinstated it, have they? Because there is a stay. But the sole purpose behind the termination of proceedings was to reinstate him, was to pick him up and remove him immediately, Your Honor. And this court, Your Honor, in a case called Waziri, in that case, the court was reviewing a rescission order of LPR status, legal permanent resident status. And the court said, well, that's not technically a final order. We will treat it as such because the result is that this person becomes immediately deportable once this rescission order has arrived. Where is Mr. Alcalan? Excuse me? Where is Mr. Alcalan? Mr. Alcalan is living and he's still here in the United States, Your Honor. He hasn't been reinstated because there is a current stay in this case. If not, then he would be reinstated. Let's talk about the denial of the motion to reopen. You're appealing that on the grounds that you had ineffective assistance of counsel. What was the prejudice? Well, Your Honor, the prejudice was, as we saw in matter of GNC, that a termination of proceeding is not a one-side proceeding. If one party opposes, the judge must then consider the evidence before him and decide. In this case, because, one, the primary attorney abandoned the client and sent an ill-prepared attorney who did not know what was going on. So there was an attorney. If you had had an attorney, you might have been able to obtain a waiver to obtain the adjustment of status at that time. Exactly, Your Honor. That's the position, and that's the position of the Perez-Gonzalez case, and that was the position of the motion to reopen pre-Perez-Gonzalez. So those arguments were being made. And we can review the denial of that motion to reopen even under Fernandez because you're making an ineffective assistance of counsel claim. Yes, Your Honor. I mean, that's another grounds for jurisdiction. We also have to look at this. The briefings here took place in April of 2005, two and a half years ago. Since then, the Real ID has also been implemented, which has expanded the judicial review of this court. The court can now review constitutional questions and questions of law. And that took effect on the date of enactment. That did not take effect any later, right? And that was 05. Yes, Your Honor. May 5, 2005. That was May of 05, I believe, is when the Real ID was enacted. And this court in Ramadan dealt with what is a question of law, and they said that included mixed questions of law and fact. And that's what we're dealing here. Mr. Archuleta never got a fair shake before the immigration judge. He was never allowed to present his claims of his adjustment of status application and his waiver because the judge unilaterally terminated proceedings without considering the evidence before him. What is the relief that you're asking for? Adjustment of status, Your Honor. The ability to ‑‑ No, we can't grant that. Well, I understand that. We're asking for a remand to the BIA to consider that you had a plausible ground for relief and to reconsider the issue. Yes, Your Honor. We want that opportunity to be heard on the Perez-Gonzalez issue, which basically means that the court would adjudicate the adjustment of status and the waiver in the context of the Perez-Gonzalez holding. May I ask you this? Would you object to being referred to mediation to mediate whether there is, in fact, a basis for discretionary relief on your adjustment of status claim? And get that out of the way, and then they can file a final order, and you can proceed after that? Your Honor, I would not be opposed to any mediation. I would not be opposed to further briefing in this case because it's been a while. It's been two and a half years, and certainly ‑‑ Weeks have happened since you've ‑‑ Especially in the era of immigration law. Right. Your Honor, I would reserve one minute for rebuttal. And look up, if you can, the orders that Judge Baya was discussing. Yes. How about mediation? Well, may it please the Court, my name is Jesse Bless. I represent the Attorney General. The problem ‑‑ Are you authorized to make a recommendation regarding mediation, or would you have to consult that with your hires and bettors? I think I'm here on behalf of the Attorney General. I think I can ‑‑ in addressing that claim, I think the problem is the Court has no jurisdiction, and it's not going to have jurisdiction because there is no final order of removal. Neither was the motion to reopen. Don't we have ‑‑ we do have jurisdiction over denial of submission to reopen under certain circumstances after Ramadan and Fernandez. I would respectfully disagree. Because ‑‑ The motion to reopen, even if it's ineffective, even if it's a constitutional or legal claim, the Real ID Act, 1252A2D, says this Court has jurisdiction notwithstanding subsections B and C, other than in this section. This section is 1252, such that if someone filed an untimely petition for review, if venue was improper, if there was other jurisdictional infirmity that's outlined in 1252, this Court would not have jurisdiction notwithstanding. But that's not what this case is. Well, an ineffective assistance of counsel claim is a constitutional claim. That's rooted in due process terms. But Ramadan says we have jurisdiction over that. No, no, no. But other than in this section, when there's not a final ‑‑ in Ramadan there was a final order of removal. When there's no final ‑‑ I mean, the way I would explain it to, and I think this is ‑‑ there's a gate. You know, there has to be a ‑‑ within 30 days someone has to file a petition for review after a final order of removal. The venue has to be proper. There are certain ‑‑ What is holding up the ‑‑ why don't you file a final order of removal? And let's get this show on the road. I mean, what are the policy considerations for putting this man in limbo? He can certainly ‑‑ he's free to right now go file his adjustment application, because he's not in adjustment. He's not in removal proceedings right now. He already filed it. He filed his adjustment of status in 2001. And he sought the waiver. And then when it came time for the hearing, his lawyer didn't show up. And so the IJ, for whatever reason, and really unfairly, just said, okay, I deny. And pre‑terminated the hearings. And then he sought a motion to reopen that, because this guy has more than a plausible claim for adjustment. And you deny that. And I think under Fernandez, we have jurisdiction to review that. I think it's a fundamental tenet of immigration law and the jurisdiction of the Court of Appeals that without a final order of removal, this Court has no jurisdiction. Let me be clear. There's absolutely ‑‑ I don't think so. Any other proceeding. But as Judge Wardlaw just indicated, you say he can file an application for adjustment of status. He has done so. Right. Why don't you simply, on the record, stipulate that you deem the prior application for adjustment of status as being newly filed? He would have to file it with the Department of Homeland Security, because that's where jurisdiction now lies. But who did he file it with before? He filed it with the immigration judge. Well, the immigration judge. Here's the timeline of events that made this such a confusing situation. When he gets expeditedly removed, he's given a new A number, because he presented a fake ID at the border. Okay? So he has a new A number at that time. He had a previous A number when he came in in 1988. That was one A number. He leaves in 2000 to go to Mexico. He comes back, presents a fake ID, accepts expedited removal. They assign him a new A number. When he illegally reenters within a three-month period thereafter, when he shows up, when he gets placed in the proceedings again, they don't know about the new A number. They only have the old A number on file. Because the Department of Justice and Department of Homeland Security aren't talking to each other. Why should the fact that there's two different files sitting in two different places operate to preclude relief when it's warranted? If someone's going to present himself as someone they are not and get a new A number. That was a prior proceeding. Now he's in. He married a U.S. citizen, and he filed for an adjustment. And he is, by the way, entitled under the waiver, 212-something, provisions to have that fraudulent, use of the fraudulent card waived. Yeah. And he's entitled to have a hearing on that. Absolutely. And it's the bureaucracy of these people, the IJs, the DHS, the Department of Justice, that can't put two files together that's precluding it. It's certainly difficult when someone is, sure, they make mistakes. But that shouldn't go to the benefit of someone who's trying to fraudulently enter this country and then reenter illegally. But you're ignoring the fact that he can have that waived. He's entitled under the law to have that waived. Right. You have not even allowed him to have a hearing to present why you should give him that waiver. You're just stopping him way back at the beginning of the thing, ignoring the fact, the subsequent facts, that he married a U.S. citizen, filed an adjustment of status, has had ineffective assistance of counsel, both deficient for not showing up, and a plausible claim for relief. And you're saying we don't have jurisdiction. I think we do under Fernandez. I don't happen to have the case in front of me, but I was just looking at it last week in connection with several screening cases. And we have jurisdiction under certain circumstances, and Lozada is one of them. Let me ask you a question, counsel. It's my understanding from what we've heard here that the removal order has not been reinstated. As far as I'm concerned, as far as I know, yes, it has not. What Judge Wardlaw is asking you to tell us about is that in the case of Fernandez v. Gonzalez, it says, in sum, we have jurisdiction over motions to reopen regarding cases in which, and the fourth of that is, an independent claim such as ineffective counsel is at issue. So how do you distinguish Fernandez? In Fernandez, I believe there was a final order of removal. That, and so it was not addressed. But we were saying we had jurisdiction over the motion, the denial of the motion to reopen. We weren't even talking about the – I don't even remember who was on that panel, but we weren't talking about the final order. Of course we have jurisdiction over final orders of removal. The issue in that case had to do with the motion to reopen. I know, but what's a fundamental tenet, the door, the gate into this court of appeals is a final order of removal. That is very clear. I cannot stress it enough. Without that, this court motions to reopen anything that doesn't deem – there's nothing in the record, and he – respectfully, there's nothing he can point to that would allow an immigration official to remove Mr. Alcala at this point. There's nothing. He's – at this point, he won. Proceedings were terminated. He could go to the Citizenship and Immigration Services, present his application for adjustment, and have it adjudicated there, and he should do so. He should do so. He will be adjudicated. It's just not before the immigration judge. It's before the Department of Homeland Security now. And the reason for doing so is because he was already subject to a final order of removal. So they wanted to reinstate him, and if he had to apply for Mexico, that's fine. He can go to the counselor official there and apply for adjustment status. This person was subject to a final order of removal. All they wanted to do was reinstate and have him apply out at the border, which is what adjustment is fundamentally about. That's when – the history of adjustment status was always done at the border with a counselor official. Wouldn't he have to pay another $1,000 fee? He would have that waived. He would have it waived. He would say it's date-stamped. It's date-stamped. He said, I already paid it. Well, if this is so simple, why don't you take up Judge Baez's suggestion and get together and work it out so that he doesn't have to leave the country and leave his family and can get his status adjusted. We could send you to the Ninth Circuit mediators. We've had very successful mediations lately in immigration cases. It is the position of the Attorney General that this Court should not hold on to cases in which jurisdiction does not exist. Mediation isn't an exercise of jurisdiction. Right. But there's nothing stopping him. He doesn't need anything from the Attorney General to go over to SIS right now today and apply. Well, what about a little comfort by saying we won't reinstate the order of removal whilst you're going through immigration and whilst you apply for your adjustment of status? People sleep better that way. I agree. I don't know if they'll do that because what we have here is someone who illegally reentered Right, but that just begs the question of whether he's entitled to that waiver, which is granted a fair amount as far as Gonzalo is recognized. Right, and he will have that adjudicated. The problem here, though, is that without a final order of removal, this Court is simply powerless, and he needs to make that. Put it this way, and if I may. We don't feel very powerless. No, I understand. I understand, but put it this way. If it's reinstated today, let's say you're quick and the decision comes out and it was decided on behalf of the Attorney General, if they reinstate that final order of removal, at that point he could petition to this Court for review from that reinstated final order of removal. What if we don't make a decision for six months? Can he go tomorrow and apply for that while this case is pending? What's that? Well, he'll have a stay. He could also request a stay from the Department of Homeland Security at the time he files his application. There are many avenues for him. It's just not this avenue. That's the point. Okay. I think we understand what you're saying, Counsel. I think you had a minute left. Your Honor, first as to Judge Vea's question, in the certified record, page 134 is the order of removal. Is that excerpts of Record 134? Yes. Page 134, which says, Order of Removal under Section 235B1 of the Act. Based upon the determination set forth and above and the evidence presented, you are found to be inadmissible as charged in order to remove from the United States. Page 134 through 136 is the expedited removal order. So there is now ñ it's not a simple solution as the government presents. First of all, he cannot seek adjustment of status at the consular abroad. Why? Because they don't recognize Perez-Gonzalez. And the only reason he would be eligible for adjustment of status here is because the Perez-Gonzalez decision allows the consideration of the waiver. However, you have to be fair. The Perez-Gonzalez decision came out long after this case, long after this judge had a chance to make this decision. I mean, this decision was made by this judge before Perez-Gonzalez was even thought of. It was on appeal, maybe, but that was the best we can say. And what you're suggesting to me on an abuse of discretion basis, that I'm going to say to that judge who made that decision on that day, based on the fact that he had a prior removal order that's not even being enforced, that he was going to abuse his discretion by not allowing the case to be dismissed when the statutes that he faced are very clear on the face of them that the attorney general can stop a proceeding anytime they want to. And therefore, he was going to have, in his quiver of arrows, the idea that there would be some Ninth Circuit decision come down two years later that would say, based on a totally different situation, because the removal order was in the record, that he would therefore, having filed that application, not be entitled to have that case go away. Now, that judge, based on those considerations, it's an abuse of his discretion that he didn't do it? It was an abuse of discretion that he didn't consider the evidence based on the case law of matter of GNC, which specifically states that a case cannot be terminated as a one-sided affair. You must consider the evidence before you. The judge only simply said, we have nothing to talk about, and it's part of the record. That's all he said. There was no consideration of any argument. Weren't the statutes the same that existed at the time Perez-Gonzalez came down? Isn't it the same statutory framework? Same statutory framework. While on appeal and the motion to reopen, we provided those arguments to the BIA, and they rejected it. And that's why we've been here all this time. Now, Your Honor, if we were to go to mediation and we were to file an adjustment of status application with the service as the government recommends, the current policy right now is that they are holding in abeyance all the Perez-Gonzalez And that's been the case now for the past two years. I have cases, Perez-Gonzalez cases, that have been held in abeyance for one, two, three years now, well, two years, because they're waiting for another result. They don't like Perez-Gonzalez? They don't like Perez-Gonzalez. Perez-Gonzalez is final in the Ninth Circuit. And that's why in the Duran-Hernandez case, there was a class action lawsuit filed in Washington that's now on appeal here with the Ninth Circuit. They said, you have to follow Perez-Gonzalez. And the court agreed. Yet, because they took it on appeal, they have all these cases held in abeyance. Did they take it? Did they petition for cert before the Supreme Court? Not on the Perez-Gonzalez. The Duran-Hernandez case is pending currently right now with this court. So, you know, we're stuck here. You know, we can't go anywhere. And that's why we want our fair shake before the judge. We simply want an opportunity for our applications. You want it remanded back to the judge to present all this to the BIA? Yes. All right. Thank you, counsel. Thank you. The case of Acala v. Kisler will be submitted. And we will take it. Schimel v. Kisler. Schimel v. Lippe, I guess, v. Kisler.
judges: Wardlaw, Bea, Smith